NO. 25-10205

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

NOBLE PUBLIC ADJUSTING GROUP, LLC
Plaintiff/Appellant

V.

UNITED STATES SMALL BUSINESS ADMINISTRATION et al
Defendants/Appellees

_____

BRIEF

OF APPELLANT, NOBLE PUBLIC ADJUSTING GROUP, LLC

_____

On Appeal from the Northern District of Florida
Case No. 5:23-cv-223
The Honorable Allen Winsor, District Court Judge

DALE F. WEBNER, ESQ.
FLORIDA BAR NO. 265241
MILLER & WEBNER, P.A.
2442 POINCIANA COURT
WESTON, FLORIDA 33327
954-812-3567
dwebner@millerwebner.com

**NO. 25-10205**
**Noble Public Adjusting Group v. SBA**

## DISCLOSURE STATEMENT

Pursuant to Rule 26.1-1(a)(3) of the Rules of the United States Court of Appeals for the Eleventh Circuit, Appellant, Noble Public Adjusting Group, LLC, discloses and files the following interested judges, persons, attorneys, law firms, firms, partnerships, corporations, or other legal entities as follows:

Avila, Jose A., Prior Counsel for Appellant

Coody, Jason R., United States Attorney for Appellees

Frank, Michael J., U.S. District Court Magistrate

Guzman, Isalella Casillas, Administrator of SBA, Appellee

Jun, Andrew, Prior Counsel for Appellant

JunAvila, PLLC, Law Firm of Prior Counsel for Appellant

Miller, Rebecca M. – Partner in Law Firm of Appellant's Counsel

Miller & Webner, P.A. - Law Firm of Appellant's Counsel

Moyle, Marie A., Assistant United States Attorney for Appellees

United States Small Business Administration, Appellee

Webner, Dale F. – Counsel for Appellant

Williamson, James David, Owner of Appellant

Winsor, Allen, U.S. District Court Judge

Appellant and Counsel further certify that, to their knowledge, there are no publicly traded corporations or entities that are interested in this case.

## STATEMENT REGARDING ORAL ARGUMENT

Although Appellant submits that the issues argued below are dispositive as a matter of law based on indisputable facts, Appellant requests oral argument to answer questions and concerns the Court may have about the facts and law argued by Appellant and Appellees.

## TABLE OF CONTENTS

DISCLOSURE STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . .  iii

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii, iv

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv, v

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

STANDARDS OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

    A. IN A SECOND DRAW PPP LOAN APPLICATION, "INCURRED" COMPENSATION THAT AN APPLICANT IS OBLIGATED TO PAY IS INCLUDED IN THE CALCULATION OF THE LOAN AMOUNT UNDER THE INSTRUCTIONS IN THE LOAN APPLICATION, UNDER THE DEFINITION OF PAYROLL COSTS, AND UNDER THE "INCURRED OR PAID" LANGUAGE OF THE LOAN FORMULA. . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

B. THE WORD "PAYMENT" IN THE LOAN FORMULA DOES NOT ELIMINATE ALL MEANING OF "INCURRED OR PAID" IN THE LOAN FORMULA, THE STATUTORY DEFINITION OF PAYROLL COSTS, AND THE LOAN INSTRUCTIONS TO INCLUDE BOTH PAID AND OBLIGATED TO PAY COMPENSATION AND RENDER THEM ALL SUPERFLUOUS. . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## TABLE OF AUTHORITIES

**CASES:**

*Aspen American Insurance Company v. Landstar Ranger, Inc.,*
   65 F.4th 1261 (11th Cir. 2023) …………………………………………… … 12

*Barton* v. *U.S. Attorney General*, 904 F.3d 1294 (11th Cir. 2018) ……. 11, 16, 20

*Chevron U.S.A., Inc.* v. *Natural Resources Defense Council, Inc.*
   467 U.S. 837, 104 S. Ct. 2778 (1984) ………………………………………… 10

*Colon v. Twitter, Inc.,* 14 F.4th 1213, 1217 (11th Cir. 2021) …………………… 12

*Department of Agriculture Rural Development etc. v. Kirtz,*
   601 U.S. 42, 144 S. Ct. 457 (2024) ……………………………… 10, 12, 14, 20

*Glover v. Ocwen Loan Serrvicing, LLC*, 2025 WL 377810 (11th Cir. 2025) …... 11

*Gustafson v. Alloyd Company, Inc.,* 513 U.S. 561, 115 S. Ct. 1061 (1995) … 12, 20

*Hart v. Credit Control, LLC,* 871 F.3d 1255, 1257 (11th Cir. 2017) ……………. 11

*Loper Bright Enterprises et al v. Raimondo*, 144 S. Ct. 2244 (2024) ………….. 10

iv

*Loughrin v. United States,* 573 U.S. 351, 134 S. Ct. 2384, 2389 (2014) …… 12, 16

*United States v. Garcon,* 997 F.3d 1301 (11th Cir. 2021) …………  11, 16, 17, 20

**STATUTES AND RULES**

5 U.S.C. §702 …………………………………………………………...  1

15 U.S.C. §636 ………………………………………………………….  2

15 U.S.C. §636(a)(36)(A)(viii) …………………………………………  3, 8, 14

15 U.S.C. §636(a)(37)(C)(i) ……………………………………………  3, 5, 8

15 U.S.C. 636a(37)(J) ………………………………………………..  5

28 U.S.C. §1291 ………………………………………………………....  1

## INTRODUCTION

**Names:**  Appellant was the Plaintiff and Appellees were the Defendants in the case below.  In this Brief, the Appellant/Plaintiff will be referred to as "Noble" and the Appellees/Defendants will collectively be referred to as "the SBA", as the issues and facts are the same for all Appellees.

**Appendix:**  Noble files herein an Appendix to be cited as "App. __" corresponding to the same number as the Docket entries, followed by "p. __/__", with the first page, if any, before the "/" being the page of the document and the second page after the "/" being the page in the full Appendix shown at the bottom left of each page and on the thumbnails.

## JURISDICTIONAL STATEMENT

(A)    The District Court had jurisdiction over the case under the Administrative Procedure Act in 5 U.S.C. §702.

(B)    The District Court's Order under review is a Final Order granting the SBA's and denying Noble's Motions for Summary Judgment as to all parties, so that the Court has jurisdiction of this appeal under 28 U.S.C. §1291.

(C)    The Final Order (App. 30) under review was filed on January 3, 2025, and the Notice of Appeal was filed on January 22, 2025.

(D)    This appeal is from a Final Order disposing of all claims by and against all parties.

## STATEMENT OF THE ISSUES

A.  IN A SECOND DRAW PPP LOAN APPLICATION, "INCURRED" COMPENSATION THAT AN APPLICANT IS OBLIGATED TO PAY IS INCLUDED IN THE CALCULATION OF THE LOAN AMOUNT UNDER THE INSTRUCTIONS IN THE LOAN APPLICATION, UNDER THE DEFINITION OF PAYROLL COSTS, AND UNDER THE "INCURRED OR PAID" LANGUAGE OF THE LOAN FORMULA.

B.  THE WORD "PAYMENT" IN THE LOAN FORMULA DOES NOT ELIMINATE ALL MEANING OF "INCURRED OR PAID" IN THE LOAN FORMULA, THE STATUTORY DEFINITION OF PAYROLL COSTS, AND THE LOAN INSTRUCTIONS TO INCLUDE BOTH PAID AND OBLIGATED TO PAY COMPENSATION AND RENDER THEM ALL SUPERFLUOUS.

## STATEMENT OF THE CASE

In early 2020, the United States was struck by the Covid-19 virus pandemic, which caused economic loss and uncertainty throughout the country.  In response, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act" or "Act") as part of the Small Business Act, 15 U.S.C. 636, which among other things established the Paycheck Protection Program ("PPP"). The primary purpose of the PPP was to keep American workers paid and employed and to assist small businesses adversely impacted by the Covid-19 emergency.  Congress allocated funds for a PPP first draw loan and later allocated additional funds for a PPP second draw loan (the "Second Draw PPP Loan") to help small businesses stay afloat during the pandemic.  The PPP Second Draw Loan provisions of the Act involved the determination of eligibility of the small business, the manner of calculating the maximum loan amount, the use of the

2

loan proceeds, and the requirements for forgiveness of the loan.  The SBA was charged with the administration of the Act.

The statutory formula ("Loan Formula") at 15 U.S.C. §636(a)(37)(C)(i) to determine the amount of a Second Draw PPP Loan states:

> Except as otherwise provided in this subparagraph, the maximum amount of a covered loan made to an eligible entity is the lesser of
> (I) The product obtained by multiplying-
>    (aa) at the election of the eligible entity, the average total monthly payment for payroll costs **incurred or paid** by the eligible entity during –
>       (AA) the 1-year period before the date the loan is made; or
>       (BB) calendar year 2019; by
>    (bb) 2.5; or
> (II)  $2,000,000. (Emphasis added.)

To further clarify the meaning of the words in the Loan Formula, the definition of "payroll costs" at 15 U.S.C. §636(a)(36)(A)(viii) states:

> (viii) the term "payroll costs"—
>    (I) means—
>       (aa) the sum of payments of any compensation with respect to employees . . . and
>    (II) Shall not include—
>       (aa) the compensation of an individual employee in excess of $100,000 on an annualized basis, as prorated for the period during which the compensation is paid or the obligation to pay the compensation is incurred . . .  (Emphasis added.)

Noble with its 95 employees was a small business and met the eligibility

requirements for the Second Draw PPP Loan (App. 21-8, p.2/58). Through its

qualified lender, Regions Bank, in January 2021 Noble applied for a Second Draw

PPP Loan[1] in compliance with the clear "instructions" in the official Loan

Application (App. 21-2, p.4/38), which stated:

> For purposes of calculating "Average Monthly Payroll" . . . use the
> average monthly payroll for 2019 or 2020, excluding costs over
> $100,000 on an annualized basis, as prorated for the period during
> which the payments are made **or the obligation to make the**
> **payments is incurred** for each employee. (Emphasis added.)

In accordance with the instructions, Noble's application was calculated

using both payments that had been made and "incurred" payments it was obligated

to make. Noble's application was granted in the full amount authorized by the

Loan Application of $1,637,0296, well under the $2,000,000 statutory cap in the

Loan Formula quoted on page 3. The loan was fully funded. Every penny of the

loan was used for payroll expenses in satisfaction of the very purpose of the Act[2].

---

[1] Noble's first draw PPP loan had already been granted, funded, properly used, and forgiven.

[2] Unlike many of the PPP loans, there has never been an issue of fraud, overreaching, or misuse by Noble.  Noble needed the loan funds to maintain the economic security of its 95 employees (App. 21-3, p.2/36).  It used the funds for that purpose (App. 21-7, pp.1-7/49-55). But then, after the pandemic and economic uncertainty caused by it subsided, the SBA and District Court are now requiring Noble to repay from its own funds money properly paid to its employees.

4

In September 2021, Noble applied for forgiveness of the loan (App. 21-3, p./41), meaning the loan did not have to be repaid. As reflected in the Forgiveness Application, Noble did not even have to use any portion of the loan for the payment of expenses in addition to payroll, as permitted by 15 U.S.C. 636a(37)(J) (App. 21-3, p./41).

In March 2022, the SBA requested various documents including a "Payroll Summary Report" to identify the compensation for "additional wages incurred" to employees, including employees with annualized earnings over $100,000 per year (App. 21-6, p./46), which the "instructions" in the Loan Application and definitions required to be excluded.

In response, Noble provided a Declaration (App. 21-7, pp./49-51) and revised Declaration [App. 22-1; pp./78-80 (ECF 22-1; pp.1007-1009)] explaining the nature of its business and the requested Payroll Report with the specific amounts of the paid and the "additional wages incurred" stated for each employee in the Report (App. 21-7; pp.4-7/52-55). The Payroll Report showed the total amount of $4,587,488.29 of compensation paid separately to each employee in 2020 in Column A, followed by the amount per employee of the 2020 additional wages incurred of $2,936,068 paid to each employee in 2021 in Column B, followed by the 2020 additional wages incurred paid to each employee in 2022 in

Column C, and the final Column showing the combined paid and incurred payroll for each employee capped at the required $100,000 or less.

As stated in the Declaration, the employees were absolutely entitled and Noble was absolutely obligated to pay the incurred compensation (App. 22-1; p.2/79). There was no issue below that Noble was not obligated to pay the incurred compensation reflected in the Payroll Report, nearly $3,000,000 of which was paid during the 2021 year of the loan, as also reflected in the Report (App. 21-7, p.7/55).  In fact, the SBA acknowledged in its Motion for Summary Judgment the "undisputed fact" that Noble was obligated to pay the incurred compensation (App. 25. p.7/93, ¶13), which once again was confirmed by Noble in its Declaration (App. 22-1; p.2/79)

On March 28, 2022, the SBA allowed the forgiveness in part but denied the forgiveness in the amount of $802,027 (App. 21-8, p./57) based on its position that Noble's common business practice for the insurance industry does not "change the methodology for the calculations of the second draw loan".  Based on that unexplained "methodology", the SBA granted partial forgiveness in the amount of $835,002 corresponding to the payroll costs actually paid but denied forgiveness for any "incurred" compensation that Noble was still obligated to pay, but were not actually paid in 2020, so that Noble now has to return all the loan amount that it was obligated to pay, even though most of it had already been paid to the

<u>employees at the time of the SBA Decision</u> in accordance with the very purpose of the CARES Act. The SBA gave no explanation for its "methodology for the calculations", no interpretation or discussion of "incurred or paid" in the Loan Formula, and no reference to the definition of "payroll costs" in the Act or instructions in the Loan Application wherein the applicant was instructed to "use the average monthly payroll" as "prorated for the period during which the payments are made or the obligation to make the payments is incurred".

Noble appealed the SBA Decision to the OHA. On September 14, 2022, the OHA denied the appeal by first calling the word incurred "superficial" (App. 21-10, p.4/64) and then equating the words paid and incurred as both meaning paid, because, as it reasoned, incurred meant now incurred and paid, and paid meant previously incurred and now paid (App. 21-10, pp.4-5/64-65, <u>as if that word juggling is what Congress intended</u> (App-21-10, p.5/65).  Noble requested reconsideration, but on September 26, 2022, the OHA denied reconsideration (App. 21-11, p./67).

Noble timely filed its Complaint to the District Court (App. 1, p./8). Noble and the SBA each filed Motions for Summary Judgment (App. 23, p./82 and App. 25, p./87, respectively).  On January 3, 2025, the District Court entered the Final Order under review (App. 30, p./108) granting the SBA's and denying Noble's Motions for Summary Judgment in sole reliance on the word "payment" in the

7

Loan Formula and expressly finding that the word "incurred" in the Loan Formula also meant paid (App. 30; p.4/111).  Noble timely filed this appeal.

## SUMMARY OF ARGUMENT

The issue in this case is whether the Second Draw PPP Loan only includes compensation that is actually paid or whether it also includes compensation that is obligated to be paid as "incurred", but not yet paid. The Loan Formula in 15 U.S.C. §636(a)(37)(C)(i) states that it includes payroll costs that are "incurred or paid".

In 2021, the SBA answered the question with its own official Second Draw PPP Loan Application and the "instructions" therein (App. 21-2; p.4/38).  In the Loan Application, the SBA instructed Noble that the "Average Monthly Payroll" to "use" in the loan was:

> For purposes of calculating "Average Monthly Payroll" . . . use the average monthly payroll for 2019 or 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made **or the obligation to make the payments is incurred** for each employee.

This language largely traces the same language in the definition of "payroll costs" used in the phrase "payment for payroll costs incurred or paid by the eligible entity" in the Loan Formula.  The definition of "payroll costs" in 15 U.S.C. §636(a)(36)(A)(viii) states that such "payroll costs" do not include compensation that is paid or the obligation to pay the compensation that is incurred over

8

$100,000 per employee, so that the paid and obligated to pay incurred compensation under $100,000 would be included in payroll costs, just like the instructions in the Loan Application stated.

Noble complied with the letter of the SBA instructions. As instructed, Noble included in its application the 2020 compensation that it actually paid and the 2020 compensation that it was absolutely obligated to pay, as set forth in the Payroll Report requested by and provided to the SBA (App. 21-7; pp.4-7/52-55). The application was granted, and the loan was fully funded. In the Payroll Report, Noble showed that it even paid nearly $3,000,000 of the incurred 2020 compensation it was obligated to pay in 2021, the same year as the Second Draw PPP Loan. In the same Payroll Report, Noble capped all paid and incurred compensation at $100,000 per employee as required by the instructions in the Loan Application and as required by the definition of "payroll costs".

Yet, contrary to its own instructions in the Loan Application and the definition of "payroll costs" incorporated into the Loan Application, by the time of the forgiveness application (App. 21-3, p./41) in late 2021, the SBA and eventually the District Court determined that all compensation had to be actually paid in sole and isolated reliance on the one word "payment" in the Loan Formula, contrary to the standards and maxims of statutory construction that statutes should be read to give each of its provisions full effect, and that courts should not look at one word

9

or term in isolation, but instead look to the entire statutory context, *United States v. Garcon,* 997 F.3d 1301, 1306 (11th Cir. 2021), and contrary to the "virtually conclusive" definition of "payroll costs", *Department of Agriculture Rural Development etc. v. Kirtz,* 601 U.S. 42, 144 S. Ct. 457, 475 (2024).

The SBA and District Court decisions were also contrary to the very purpose of the CARES Act to protect small businesses and their employees from the economic crisis caused by the pandemic, including not only assuring the payment of the "payroll costs" that had been paid, but even more importantly, assuring the payment of "payroll costs" that were not and in many instances could not be paid without the Second Draw PPP Loans, which easily explains Congress's selection and use of the word "incurred" throughout the Act.

## STANDARDS OF REVIEW

Rather than repeat them in each argument below, the following standards of review are applicable to both.

1. First, as the Court undoubtedly knows, the *Chevron U.S.A., Inc.* v. *Natural Resources Defense Council, Inc.* 467 U.S. 837, 104 S. Ct. 2778 (1984) case and its standard of deference to administrative agencies and their decisions has been overruled by *Loper Bright Enterprises et al v. Raimondo*, 603 U.S. 369, 144 S. Ct. 2244, 2270 (2024). As *Loper Bright* holds, the new standard is: "The

Administrative Procedure Act requires courts to exercise their independent judgment in deciding whether an agency has acted within its statutory authority".

2.  Second, the same applies to the Final Order of the District Court.  As this Court in *Glover v. Ocwen Loan Serrvicing, LLC*, 2025 WL 377810, 377820 (11th Cir. 2025) once again recognized the law for years to be, the review of a District Court's interpretation of a statute is de novo. *Hart v. Credit Control, LLC,* 871 F.3d 1255, 1257 (11th Cir. 2017)

## ARGUMENT

To best understand this case, one must start with the law and maxims of statutory construction to address the issue of whether the words selected by Congress in the Second Draw PPP Loan Formula and the statutory definitions of those words have meaning or no meaning at all. Those maxims include:

Starting with a primary maxim applicable to this case and contrary to the reliance by the SBA and District Court on one word, statutes should be read to give each of its provisions full effect. Courts should not look at one word or term in isolation, but instead look to the entire statutory context, *United States v. Garcon,* 997 F.3d 1301, 1306 (11th Cir. 2021).

Put another way, a court should not read and interpret a statute in a way that renders certain language superfluous, *Barton* v. *U.S. Attorney General*, 904 F.3d 1294, 1299 (11th Cir. 2018). All provisions must be given effect.  No words should

11

be discarded as being meaningless, redundant, or mere surplusage, *Aspen American Insurance Company v. Landstar Ranger, Inc.,* 65 F.4th 1261, 1272 (11th Cir. 2023).

When a statute includes an explicit definition, the court must follow that definition, *Colon v. Twitter, Inc.,* 14 F.4th 1213, 1217 (11th Cir. 2021). In fact, statutory definitions are said to be "virtually conclusive", *Department of Agriculture Rural Development etc. v. Kirtz,* 601 U.S. 42, 144 S. Ct. 457, 475 (2024)

Identical words used in different parts of the same act are intended to have the same meaning, *Gustafson v. Alloyd Company, Inc.,* 513 U.S. 561, 115 S. Ct. 1061, 1067 (1995).

Ordinary use of the term "or" is almost always disjunctive, that is, the words it connects are to be given separate meanings, *Loughrin v. United States,* 573 U.S. 351, 134 S. Ct. 2384, 2389 (2014).

So, the issue in this case is not only whether the words selected by Congress in the CARES Act have meaning, but also whether these standards of statutory construction have any meaning.  The SBA's answer to both questions so far is no. More specifically:

A. IN A SECOND DRAW PPP LOAN APPLICATION, "INCURRED" COMPENSATION THAT AN APPLICANT IS OBLIGATED TO PAY IS INCLUDED IN THE CALCULATION OF THE LOAN AMOUNT UNDER THE INSTRUCTIONS IN THE LOAN APPLICATION, UNDER THE DEFINITION OF PAYROLL COSTS, AND UNDER THE "INCURRED OR PAID" LANGUAGE OF THE LOAN FORMULA.

Under these well-settled statutory construction maxims and the words selected by Congress, Noble could commence and complete this argument by merely repeating its reliance on[3] and compliance with the SBA's own instructions in the Loan Application, which alone should be dispositive.  Noble applied for the Second Draw PPP Loan in full compliance with the Loan Application, which included the calculation of its "Average Monthly Payroll using the two separate payroll and "payment"[4] inclusions of first the "payments [that] are made" and second "the obligation to make the payments" that are incurred.  The Loan Application was the official form required to be completed to apply for the loan.  It is quite clear and deserves being repeated:

---

[3] Although now after-the-fact speculation, one could argue that if the SBA did not mean that its own instructions in the Loan Application only meant what was paid and not what the employer was obligated to pay, as the instructions said, not to mention funding the full loan at the time, Noble and other small businesses could possibly have paid out-of-pocket or procured other means to fund some or all of the "incurred" compensation and thereby include that paid compensation in the Loan Application.

[4] Noble will return to this quite revealing and perhaps dispositive use of the word "payment" in the Loan Application itself showing that when used as a noun the one word "payment" relied upon by the SBA and District Court can and in fact does refer to "payments" that are actually paid and "payments" that one is obligated to make.

> For purposes of calculating "Average Monthly Payroll" . . . use the average monthly payroll for 2019 or 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made **or the obligation to make the payments is incurred** for each employee. (Emphasis added.)

There is nothing ambiguous about this language. There are two separate "Average Monthly Payroll" types of compensation that may be included in the application for the loan. The first is the "payments [that] are made". The second is the "obligation to make the payment [that] is incurred". This is the same language from the statutory definition of payroll costs quoted at page 3. These two separate payroll inclusions of payments made and the obligation to make payments can only have separate meanings, which is their ordinary meaning that one is what has been paid and the other is what the employer is obligated to pay. Otherwise, there would have been absolutely no reason whatsoever for Congress to have selected this language, including nearly the same language in the definition of "payroll costs", which are "virtually conclusive" under *Department of Agriculture Rural Development etc. v. Kirtz,* 601 U.S. 42, 144 S. Ct. 457, 475 (2024). The definition of "payroll costs" at 15 U.S.C. §636(a)(36)(A)(viii) also deserves being repeated:

> (viii) the term "payroll costs"—
> . . .
>> (II) Shall not include—
>>> (aa) the compensation of an individual employee in excess of $100,000 on an annualized basis, as prorated for the period during which the compensation is paid or the obligation to pay the compensation is incurred . . . (Emphasis added.)

14

It is 100% clear that both compensation that "is paid" and the "obligation to pay the compensation" that is incurred in excess of $100,000 per employee are excluded from "payroll costs". It would, therefore, be illogical to suggest that this does not also mean the same compensation that is paid or the compensation that one is obligated to pay are not also included in the payroll costs under $100,000. But it is not even necessary to make that argument or for the Act to have made that obvious point, because that is what the Loan Formula already stated, i.e., the loan amount includes compensation that is both "incurred or paid". So, just like the instructions in the Loan Application said, the definition of "payroll costs" only had to confirm that the combined compensation that the employer paid or was obligated to pay could not exceed $100,000.

Based on the SBA's own "instructions" in the Loan Application, Noble determined its 2020 Average Monthly Payroll including the "payments that are made" and the "incurred" payments that it was "obligated to make" for each employee (App. 21-7, pp.4-7/52-55). Noble then capped the combined payment and obligation to pay incurred compensation at $100,000 per employee, just as both the Loan Application and definition of payroll costs required. Everything Noble did and calculated was in strict compliance with the Loan Application, the statutory definition of "payroll costs", and the statutory caps of both the maximum loan amount of $2,000,000 and the $100,000 per employee cap.

15

Not only did Noble's Declaration (App. 22-1, p.2/79) clearly describe the nature of and the absolute obligation to pay the incurred compensation, but also there was no argument by the SBA or issue before the District Court that Noble's incurred compensation was not an obligation. The SBA admitted the obligation in its Motion for Summary Judgment (App. 25. p.7/93, ¶13). In fact, Noble's Payroll Report (App. 21-7, pp.4-7/52-55) even showed that $2,936,068.71 of the obligation to pay "incurred" compensation was paid in 2021, the very year of the loan application and funding.

Contrary to the SBA's and the District Court's sole reliance on the isolated word payment in the Loan Formula, the "payroll costs incurred **or** paid" in the same Loan Formula, the "obligation to pay incurred compensation" in the definition of "payroll costs", and the instructions in the Loan Application that the "Average Monthly Payroll" is prorated for the period "during which the compensation is paid" or "the obligation to pay the compensation is incurred" <u>all must have meaning.</u> They cannot all mean the same thing, namely, "paid". The words themselves are just the opposite. The words "incurred **or** paid" separated by the disjunctive "or" in the Loan Formula do not both mean paid, as recognized by *Loughrin v. United States,* 573 U.S. 351, 134 S. Ct. 2384, 2389 (2014) in discussing the word "or". The words "compensation is paid or the obligation to pay the compensation is incurred" in the definition of payroll costs do not both

mean paid.  The instructions in the Loan Application that "Average Monthly Payroll" includes "payments or the obligation to make payments" do not both mean paid.  One cannot logically argue that Congress selected and used all these specific words and phrases, all of which have their own separate meaning, and intended them to have only one meaning, namely, paid.  If "paid" is all Congress intended with all these words and phrases, it would have been very easy to just say that without all the additional language.

The above standards and maxims of statutory construction also have meaning and application to this case.  As this Court in *Garcon* 997 F.3d 1301 at 1306 recognized, statutes should be read to give each of its provisions full effect.  Courts should not look at one word or term in isolation, but instead look to the entire statutory context.  As this Court in *Barton* recognized, a statute should not be interpreted in a way that renders certain language superfluous. All provisions must be given effect.  Yet, the SBA from the outset and the District Court in the Final Order (App. 30, p./108) relied solely on one word in isolation, namely, payment, and thereby rendered all the other words of "incurred", "obligation to pay" and even the disjunctive "or" completely superfluous and meaningless.

17

C.  THE WORD "PAYMENT" IN THE LOAN FORMULA DOES NOT ELIMINATE ALL MEANING OF "INCURRED OR PAID" IN THE LOAN FORMULA, THE STATUTORY DEFINITION OF PAYROLL COSTS, AND THE LOAN INSTRUCTIONS TO INCLUDE BOTH PAID AND OBLIGATED TO PAY COMPENSATION AND RENDER THEM ALL SUPERFLUOUS.

During the forgiveness process, the SBA did not initially rely on the word "payment" in the Loan Formula, but simply concluded that Noble's loan calculation did not comply with the SBA's unexplained "methodology" (App. 21-8, p.1/57).  In its first decision, the OHA concluded that the word "incurred" chosen by Congress was simply "superficial" (App. 21-10, p.4/64), as if Congress meant it to be "superficial" or meaningless.  After the failure to recognize and explain the meaning of the words chosen by Congress, including "incurred or paid" in the Loan Formula and the "obligation to pay" incurred compensation in both the definition of payroll costs and Loan Application, the District Court simply ignored the statutory construction standards and concluded that everything meant "paid" in reliance solely on the word "payment" in the Loan Formula.

Even the dictionary definition in *Webster's* defines the noun payment as "a paying or being paid", which not only does not support the SBA position, but is also much like this case in which Noble not only was obligated to pay the incurred compensation, but did in fact pay nearly $3,000,000 of the incurred payroll costs during the same 2021 year of the loan, as reflected in its Payroll Report without dispute (App. 21-7, pp.4-7/52-55).  But this case is not governed by a dictionary. It

18

is governed by the Act and all its words, the statutory definitions of the words, and the instructions on how to use the words. Noble will even acknowledge that the Act could have been written better and with more clarity, and there is a very good reason for that. The Covid pandemic and the resulting economic crisis came upon the country very quickly and required quick action. Congress had to debate, write, amend, and pass the CARES Act and its complex and evolving issues very quickly, so that it is not a model of clarity.

But the purpose of the Act is a model of clarity, as it was to assure that the employees were paid and the small businesses had the ability to pay their employees, even if some of the compensation was simply incurred and not yet paid because the small business may not have then had the ability to pay, which easily explains the selection and use of the word "incurred" throughout the Act and Loan Application. This would be particularly true for the 2020 payroll[5] during the very heart of the pandemic when some of that 2020 payroll could not be paid by many small businesses but was simply incurred awaiting payment through a second draw PPP loan.

What is also clear is that Congress used the words "incurred" and "paid" over and over in a variety of overlapping contexts, from the Loan Formula itself, to the definition of the words payroll costs used in the Loan Formula, to the Loan

---

[5] As previously noted, the year 2020 was one of the years which could be used for calculation of the Second Draw PPP Loan.

Application. If Congress solely meant that the monthly average of payroll costs only meant actually paid at the time of the second draw PPP loans in 2021, it would have been very easy to just say that.  But it did not.  Instead, Congress chose to recognize the likelihood of incurred, but unpaid compensation, as it said in the Loan Formula with "incurred or paid", as it said in the definition of payroll costs directly following the word payment in the Loan Formula, and as the Loan Application said by stating the "Average Monthly Payroll" included both paid compensation and the obligation to pay incurred compensation.

One cannot reasonably and logically argue that all these other words obviously chosen by Congress with a purpose and meaning nevertheless have NO meaning, as the SBA has argued and will argue again and as the District Court found.  Otherwise, the definition of payroll costs was no longer "virtually conclusive", as recognized in *Department of Agriculture Rural Development etc. v. Kirtz,* 601 U.S. 42, 144 S. Ct. 457, 475 (2024).  Many words in the Act were simply rendered superfluous contrary to *Barton* v. *U.S. Attorney General*, 904 F.3d 1294, 1299 (11th Cir. 2018).  "Incurred or paid" was revised to mean "incurred and paid" contrary to the plain meaning of the disjunctive "or" recognized in *Gustafson v. Alloyd Company, Inc.,* 513 U.S. 561, 115 S. Ct. 1061, 1067 (1995).  Rather than giving all provisions of the Act effect as required by *United States v. Garcon,* 997 F.3d 1301, 1306 (11th Cir. 2021), one word was isolated, namely, payment, and no

effect was given to "incurred or paid" in the Loan Formula, paid or the "obligation to pay" in the definition of payroll costs, and the same meaning of Average Monthly Payroll in the Loan Application.

But, as the SBA will continue to argue, we still cannot ignore the word "payment". Just like the SBA and District Court had to give meaning to "incurred or paid" and the "obligation to pay", which they did not, so too should Noble give meaning to payment within the context and purpose of the Act. It is actually quite easy and clear. First, payment has meaning in the context of all the other words with which it is used in the Act, as required by *United States v. Garcon,* 997 F.3d 1301, 1306 (11th Cir. 2021). That is, in the Loan Formula, the word payment is defined by the words that follow it, namely, "incurred or paid during the relevant period". Second, payment is further defined by the words "payroll costs" that directly follow it in the Loan Formula, and which "payroll costs" are expressly defined in the statutory definition thereof to mean both "paid" or an "obligation to pay" incurred compensation. Third, and perhaps most important and dispositive, the word "payment" is defined by the SBA itself in its own "instructions" in the Loan Application that follows and traces the definitions of the Act.

In the Loan Application, the SBA instructs the employer/applicant that its "Average Monthly Payroll" (even capitalized and in quotes) includes prorations for both the period "during which <u>payments</u> are made" or the "obligation to make the

21

payments is incurred" for each employee.  Note that both of these paid or obligated to pay payroll inclusions themselves contain the word "payment", and it is a noun, not a verb.  As a noun, it simply describes two types of payments, one that is actually paid and one that is obligated to be paid.  And so too is the word payment in the Loan Formula a noun.  It does not say that payment is an action that must have actually occurred.  Instead, in the context of "payroll costs" and its definition and in the context of the very clear words "incurred or paid" that follow it, payment is used as a noun prefacing the payroll costs that are both "incurred or paid".

In conclusion, during the heart of the pandemic in 2021 when it approved and funded Noble's Second Draw PPP Loan in full, even the SBA understood that the Average Monthly Payroll included both payments that were made and payments that the employer was obligated to make.  The SBA cannot with its official and required Loan Application instruct the employer in 2021 to use both its "payments" that were paid and its obligation to make "payments" that were incurred and a year later in 2022 tell the same employer that it only meant paid, that the words "incurred or paid in the Loan Formula only meant paid, and that the definition of "payroll costs" to include both compensation that "is paid" and the "obligation to pay the compensation [that] is incurred" only meant paid.

**CONCLUSION**

Based on the foregoing facts, arguments and authorities, Appellant, Noble

Public Adjusting LLC, respectfully requests the Court to reverse the Final Order of

the District Court and to remand this case to the District Court to enter summary

judgment in favor of Noble in the amount of its proper Second Draw PPP Loan

forgiveness to include both Noble's paid and incurred compensation that it was

obligated to pay.

Dated March 7, 2025,                              Respectfully Submitted

                                                    /s/ *Dale F. Webner*____
                                                  Dale F. Webner
                                                  Florida Bar No. 265241
                                                  Miller & Webner, P.A.
                                                  Attorneys for Appellant
                                                  2442 Poinciana Court
                                                  Weston, Florida 33327
                                                  Telephone:  954-812-3567
                                                  Email: dwebner@millerwebner.com

**CERTIFICATE OF COMPLIANCE**

1.  This document complies with the type volume limit of Fed. R. App. P.

32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R.

App. P. 32(f), this document contains 5710 words, and

2.  This document complies with the typeface requirements of Fed. R.

App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6),

because this document has been prepared in a proportionally spaced typeface using

Word for Mac version 16.64 with 14 point font in Times New Roman.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 7, 2025 I electronically filed a copy of this Appellant's Brief with the Clerk of Court using CM/ECF, which is believed to have sent a notice of electronic filing to Appellees' Counsel.

_/s/ *Dale F. Webner*____
Dale F. Webner
Florida Bar No. 265241
Miller & Webner, P.A.
Attorneys for Appellant
2442 Poinciana Court
Weston, Florida 33327
Telephone:  954-812-3567
Email: dwebner@millerwebner.com